**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
**EDGAR RODRIGUEZ,**          )
     **Plaintiffs,**       )
                  )     **Civil Action No. 12-1923 (RC)**
                  )
                  )     **Document No.: 15, 17**
**v.**                     )
                  )
**U.S. DEPARTMENT OF ARMY,**[1]  )
     **Defendant.**       )
_____)

## MEMORANDUM OPINION

### I. INTRODUCTION

     This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and pertains to the FOIA request of plaintiff, Edgar Rodriguez, for records maintained by the defendant, United States Department of the Army ("Army"). Specifically, the plaintiff requests records relating to the defendant's criminal investigation that resulted in the plaintiff's conviction, confinement, and dishonorable discharge for the rape and forcible sodomy of a nine-year-old girl between 1988 and 1990. The plaintiff now seeks judicial review of the Army's responses to the FOIA request. For the reasons set forth below, the Army's Motion for Summary Judgment is granted and plaintiff's Cross-Motion for Summary Judgment is denied.

---

[1] The plaintiff originally brought suit against the Secretary of the Army John McHugh. The defendant has moved to dismiss the Secretary of the Army as a party in this case. The plaintiff did not challenge the defendants' motion to dismiss and therefore, the Secretary of the Army is dismissed as a co-defendant. _See_ Defs.' Opp'n to Pl.'s Cross-Mot. 2, ECF No. 25.

## II. BACKGROUND

On April 29, 2011, the plaintiff requested that the defendant make available, pursuant to the FOIA, documents concerning the 1990 investigation of the plaintiff conducted by the Department of the Army Criminal Investigative Division ("CID"). *See* Compl. ¶ 2, ECF No. 1. The letter requested all related exhibits including interviews, notes, and video and/or audio tapes of interviews. *See id.* at ¶ 3. On behalf of the defendant, Susan Cuglar, Director of Crime Records Center, CID, granted the plaintiff's request in part and denied in part. *See id.* Of the thirty-six pages of documents identified, the defendant provided pages 000001-000023 and 000035-000036 with redactions, *see* Compl. ¶ 2, ECF No. 1, withholding the names, addresses and identification numbers of CID special agents, third party victims, and interviewees. *See* Defs.' Mem. Supp. Mot. Summ. J. 3, ECF No. 15. The defendant withheld in its entirety pages 000025-000030, which "consisted of a hand-written statement of the victim in the investigation describing being sexually assaulted by Mr. Rodriguez, a typed sworn statement of the victim describing her being sexually assaulted by Mr. Rodriguez, and two drawings produced by the victim detailing Mr. Rodriguez sexually assaulting her." *Id.*

Pages 000024 (also known as exhibit 3) and 000031-000034 were referred to the US Army Medical Command ("Army MEDCOM"), another component of the Department of the Army. *See* Compl. ¶ 3, ECF, No. 1. Army MEDCOM, acting on behalf of the defendant, responded that they withheld the responsive documents in their entirety because they contain personal medical information. *See* Defs.' Mem. Supp. Mot. Summ. J. 4, ECF No. 15. Additionally, although the provided documents identified exhibits one through twelve, the defendant only produced exhibits 1, 2, 4, 5, 6, 7 and 8. *See* Compl. ¶ 3, ECF No. 1. According to the defendant, searches could not locate exhibits nine through twelve as they were likely

destroyed at some time prior to Mr. Rodriguez's FOIA request.  *See* Defs.' Mem. Supp. Mot. Summ. J. 4, ECF No. 15.

The defendant, in support of the partial FOIA request denial, alleged that it withheld certain materials on the basis of personal privacy pursuant to 5 U.S.C. § 552, Exemptions (b)(6) and (b)(7)(C), and on the basis of information compiled for law enforcement purposes which could reasonably be expected to endanger the life or physical safety of any individual under Exemption (b)(7)(F) of the FOIA.  *See id.*  On August 5, 2011, the plaintiff, arguing that the defendant incorrectly withheld several of the materials, appealed the partial denial.  *See* Compl. ¶ 3, ECF, No. 1.  The defendant did not respond to this appeal within the requisite twenty-day period, *id.* at ¶ 4; therefore, the plaintiff sufficiently exhausted his administrative remedies necessary prior to judicial review.  *See* 5 U.S.C. § 552(a)(6)(C) (explaining that if the agency "fails to comply with the applicable time limit provisions" that the requester "shall be deemed to have exhausted his administrative remedies").

On November 28, 2013, the plaintiff filed a Complaint for Injunctive Relief against the defendant alleging violations of the FOIA.  *See generally* Compl., ECF No. 1.  Specifically, the plaintiff brings three causes of action: (1) that the defendant's refusal to disclose exhibits nine through twelve and pages 000003 and 000009, without claiming a FOIA exemption, violates the FOIA; (2) that the defendant's reliance on 5 U.S.C. § 552, Exemptions (b)(6) and (b)(7)(C) for the redactions and the refusal to disclose pages 000006, 000025-000030 and exhibit 3 is without merit; and (3) that the defendant's refusal to disclose portions of pages 000002, 000005, and 000011 on the basis of FOIA Exemption (b)(7)(F) is without merit.[2]  *See id.* at ¶ ¶

---

[2] Although the initial determination on plaintiff's FOIA request cited Exemption 7(F), the defendant now relies on Exemption 7(C) as the basis for withholding.  The defendant determined that "reliance on Exemption 7(F) was unnecessary because the information withheld under

4-5.  In sum, the plaintiff argues that "the defendant withheld information to which the plaintiff is entitled and failed to conduct an adequate search for the missing crucial documents."  Pl.'s Mem. Supp. Cross-Mot. Summ. J. 8, ECF No. 18.

The defendant has moved for summary judgment, asserting it conducted a reasonable search for responsive records and that responses to plaintiff's FOIA request were proper, explaining that those items redacted or withheld are exempt from release pursuant to certain FOIA exemptions.  *See* Defs.' Mem. Supp. Mot. Summ. J. 4, ECF No. 15.  The plaintiff has filed a cross-motion for summary judgment challenging the adequacy of the defendant's search and its refusal to disclose certain information and documents.  *See generally* Pl.'s Cross-Mot., ECF No. 17.

### III.  LEGAL STANDARDS

### A.  Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary judgment. *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 368-69 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."); *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n. 13 (D.D.C. 1980).  A motion for summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant must support its factual positions by "citing to particular parts of materials in the record, including depositions,

---

Exemption 7(F) was identifying information of law enforcement personnel properly withheld under Exemption 7(C)."  Defs.' Mem. Supp. Mot. Summ. J. 2, ECF No. 15 n.2.

documents, electronically stored information, affidavits, or declarations, stipulations . . . , admissions interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits, declarations, or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, an agency is entitled to summary judgment if it can demonstrate that there are no material facts in dispute as to the adequacy of its search for or production of responsive records.  *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 21 (D.D.C. 2012).  An agency must show that any responsive information it has withheld was either exempt from disclosure under one of the exemptions enumerated in 5 U.S.C. § 522(b), or else cannot be reasonably segregated because it is "inextricably intertwined with" exempt information. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  "Because FOIA challenges necessarily involve situations in which one party bears the burden of justifying its disclosure decisions, the courts . . . require the government to provide as detailed a description as possible – without, of course, disclosing the privileged material itself – of the material it refuses to disclose."  *Oglesby v. U.S. Dep't of Army*, 79 F.2d 1172, 1178 (D.C. Cir. 1996).

The justification for withholding information is typically contained in a declaration or affidavit referred to as a "Vaughn index" after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).  An agency's affidavits or declarations are presumed to be submitted in good faith. *See SafeCard Servs., Inc., v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  There is no set formula for a Vaughn index, because "the critical elements of the Vaughn index lie in its

function, and not its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a

Vaughn index is "to permit adequate adversary testing of the agency's claimed right to an

exemption," *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir.

1986) (citing *Mead Data*, 566 F.2d at 251), and so the index must contain "an adequate

description of the records" and "a plain statement of the exemptions relied upon to withhold each

record," *id.* at 527 n. 9.

## B. The Freedom of Information Act

FOIA was enacted to enable citizens to discover "what their government is up to." *U.S.*

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). "The

basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic

society, needed to check against corruption and to hold the governors accountable to the

governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA therefore

is broadly conceived and "seeks to permit access to official information long shielded

unnecessarily from public view and attempts to create a judicially enforceable public right to

secure such information from possibly unwilling official hands." *Dep't of the Air Force v. Rose*,

425 U.S. 352, 361 (1976) (quoting *EPA v. Mink*, 410 U.S. 73, 80 (1973)).

An agency may withhold information responsive to a FOIA request only if the

information falls within an enumerated statutory exemption. *See* 5 U.S.C. § 552(b). These

"exemptions are 'explicitly exclusive,'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151

(1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)), and "have been

consistently given a narrow compass." *Id.* "The agency bears the burden of justifying any

withholding, and the Court reviews the agency claims of exemption *de novo*." *Bigwood v. U.S.*

*Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007) (citing 5 U.S.C. § 552(a)(4)(B)).

Because the focus of FOIA is "information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citation and internal quotation marks omitted). Instead, FOIA requires that federal agencies provide to a requester all non-exempt information that is "reasonably segregable" from, 5 U.S.C. § 552(b)—that is, not "inextricably intertwined with," *Mead Data*, 566 F.2d at 260 —exempt information.

## IV. ANALYSIS

### A. Although Unable to Locate Exhibits Nine Through Twelve, the Defendant Nonetheless Conducted A Reasonable, Good-Faith Search.

While the defendant argues that it conducted a search reasonably calculated to locate all responsive documents in response to the plaintiff's FOIA request, Defs.' Opp'n 3, ECF No. 25, the plaintiff disagrees, arguing that the search was inadequate because it failed to locate certain documents and the Army failed to provide sufficient details about the search. Pl.'s Mem. Supp. Cross-Mot. Summ. J. 8, ECF No. 18. The plaintiff argues that the defendant's failure to contact the agents who created the missing exhibits and to search the field office in San Antonio, Texas, where the court martial was conducted, further rendered the search inadequate. *Id.* Additionally, without record destruction documentation, the plaintiff deems it hard to believe that the exhibits were likely destroyed. Pl.'s Reply to Defs.' Opp'n, ECF No. 28. The Court, however, finds the search adequate.

To obtain summary judgment in a FOIA action, an agency must show that it made "a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The focus is on the adequacy of the search, not on the potential existence of other responsive documents not yet located. *Weisberg v. U.S. Dep't of Justice*, 745

F.2d 1476, 1485 (D.C. Cir. 1984). Accordingly, an agency need not search every area that may contain responsive documents. *Snyder v. CIA*, 230 F. Supp. 2d 17, 21 (D.D.C. 2002). Instead, "in determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness." *Id.* at 19.

Agency affidavits will establish the adequacy of a search if they are "'relatively detailed' and nonconclusory and . . . submitted in good faith." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). These declarations "are accorded a presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1200, and can only be rebutted by "point[ing] to evidence sufficient to put the [a]gency's good faith into doubt." *Ground Saucer Watch, Inc*., 692 F.2d at 771. The failure to locate certain documents is not enough to demonstrate the inadequacy of a search or that an agency acted in bad faith. *See Twist v. Gonzales*, 171 F. App'x 855, 855 (D.C. Cir. 2005); *see also Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (explaining that the mere failure to locate a document does not by itself render a search inadequate).

Here, the defendant met its burden in establishing the adequacy of its search by submitting declarations demonstrating "that the search method was reasonably calculated to uncover all relevant documents." *Ferranti v. ATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001) (quoting *Weisberg*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The defendant initially submitted the declaration of Michele Kardelis, Chief of the FOIA/Privacy Act Office of the United States Army Crime Records Center ("USACRC"), which explains in detail the steps the defendant took to search for responsive records at the USACRC and the Fort Buchanan, Puerto Rico, and Vicenza, Italy CID field offices. Kardelis Decl., ECF No. 15, Ex. 3. Specifically, the

declaration "describes the records systems at USACRC, an accounting of CID documents determined to be responsive to plaintiff's requests, a detailed description of the search for and release of responsive records, and a justification of information withheld . . . .").  Kardelis Decl. ¶ 5; *see also Ferranti*, 177 F. Supp. 2d at 47 ("Affidavits that include search methods, locations of specific files to be searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered presumptively sufficient.") (citing *Weisberg*, 705 F.2d at 1348).

The search of USACRC located the thirty-six page Report of Investigation ("ROI") requested by the plaintiff (ROI 0029-91CID253-73901).  Kardelis Decl.  ¶¶ 11-12.  Indeed, after locating this, the defendant discovered that four exhibits mentioned in the ROI were not included within the USACRC file.[3]  As a result, the defendant subsequently requested a search of the Fort Buchanan, Puerto Rico, and Vicenza, Italy field offices, explaining that these were the locations of the original investigation.  *Id.*  ¶ 9.  The special agents in charge ("SACs") of these offices responded that their field offices contained no relevant documents.  *Id.* ¶ 12.  Although the defendant ultimately failed to locate the missing exhibits, the defendant nonetheless searched the locations likely to have maintained the exhibits themselves or the documentation of the final disposition of the exhibits.  *See* Defs.' Opp'n 12, ECF No. 25 (explaining that there is a clear record indicating that the exhibits were either maintained in Vicenza CID office or sent to the USACRC).  Therefore, the defendant met its burden by establishing its "good-faith effort to

---

[3] The missing exhibits include:  an Agent's Investigative Report prepared by a CID special agent on May 6, 1992 (exhibit 9), an evidence/property custody document prepared May 4, 1992 (exhibit 10), a video tape of an interview of a third party witness taken May 4, 1992 (exhibit 11), and a video tape of an interview of a third party witness taken May 4, 1992 (exhibit 12).  Kardelis Decl.  ¶ 11.

conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68 (D.C. Cir. 1990).

The plaintiff incorrectly argues that the defendant's search was inadequate for its failure to locate the documents. *See* Pl.'s Reply 4, ECF No. 28 (asserting that "it is the objective of producing the documents requested, rather than simply the process used to try to locate them, that is the paramount consideration" when determining whether the effort was reasonable). That is simply not the law in this Circuit. Contrary to plaintiff's argument, the fact that the defendant failed to find all the requested information, specifically exhibits nine through twelve, is not dispositive. *See, e.g., Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (explaining that although undiscovered relevant records may exist, a search is not unreasonable merely because it fails to locate all relevant materials); *Elliott v. Nat'l Archives & Records Admin.*, 2006 WL 3783409, at *3 (D.D.C. Dec. 21, 2006) ("An agency's search is not presumed unreasonable because it fails to find all the requested information."). "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol*, 790 F.2d at 956. Accordingly, courts look to the appropriateness of the methods used when analyzing the adequacy of a FOIA search. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (asserting that the adequacy of a search is not generally determined by "the fruits of the search"). Therefore, despite the defendant's inability to produce the missing documents, the search was sufficiently thorough and reasonable for the circumstances.

Not only did the defendant search the two places most likely to contain the exhibits, but the defendant also conducted additional searches. Specifically, the defendant conducted another search at Fort Sam Houston in San Antonio, Texas in response to plaintiff's opposition and

cross-motion indicating that plaintiff's 1993 court-martial was conducted there. *See* Williams

Decl. ¶ 5, ECF No. 25, Ex. 5.  The missing exhibits and videos were not found there.  *Id.* at ¶ 9.

And, after learning that evidence from Fort Buchanan was also stored at Fort Benning, Georgia's

CID field office, the defendant conducted additional searches there.  *See* Wheeler Decl. ¶ 5, ECF

No. 25, Ex. 4.  The missing exhibits and videos were not found there either.  *Id.* at ¶ 6.

Additionally, although Ms. Kardelis's declaration sufficiently detailed the search, *see Judicial*

*Watch v. U.S. Dept. of Commerce*, 337 F. Supp. 2d 146, 160 (D.D.C. 2004) (finding as sufficient

the declaration of the individual responsible for coordinating the search), the defendant

responded to the plaintiff's concerns that the defendant failed to provide enough information

about the searches at the field offices by obtaining additional declarations from the SACs at the

Vicenza, Italy and Fort Buchanan, Puerto Rico CID field offices.  *See* Spalding Decl. ¶ 5, ECF

No. 25, Ex. 3; *see also* Kellenberger Decl. ¶ 5, ECF No. 25, Ex. 6.

These additional searches and steps taken in an effort to uncover the missing documents

further establish that the plaintiff has not rebutted the defendant's presumption of good faith.  *See*

*Meeropol*, 790 F.2d at 953 (finding a lack of bad faith in the agency's actions, including

responding to inquiries and conducting a number of additional searches).  Overall, the defendant

"searched the main CID repositories of the USACRC and four of the CID field offices likely to

have been involved in the handling of the 20-year old exhibits."  Defs.' Opp'n 12, ECF 25.

Based on the failure to locate the exhibits and the CID retention policies described in two

submitted declarations, the defendant argues "it is likely that the evidence was destroyed or

disposed of more than a decade ago."  *Id; see Bey v. Dep't of Justice*, 518 F. Supp. 2d 14, 21

(D.D.C. 2007) (explaining that because a document once existed does not mean it still exists).

Although plaintiff takes issue with defendant's conclusion and argues that defendant fails to prove that the exhibits and videos were destroyed absent documentation establishing such destruction, *see* Pl.'s Reply to Defs.' Opp'n 2, ECF No. 28, defendant need not prove that the information was destroyed. *See Bey*, 518 F. Supp. 2d at 21 (asserting that the agency "is not required by the [FOIA] to account for documents which the requester has in some way identified if it has made a diligent search for those documents in the places in which they might be expected to be found) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1985)). It only need establish that it conducted an adequate search for the information. *See id.* (finding the agency's search adequate despite its failure to locate certain records). It has done so.[4]

As described above, the defendant has sufficiently established that its search was reasonable, despite its ability to locate and produce the specific documents. The Court, therefore, finds summary judgment proper on the adequacy of the search.

### B. The Army Properly Withheld Information Pursuant to the FOIA.

The defendant found thirty-six pages of documents responsive to the plaintiff's FOIA request. *See* Defs.' Mem. Supp. Mot. Summ. J. 4, ECF No. 15. Of these thirty-six pages, the defendant withheld eleven pages and disclosed twenty-five pages – twenty-four pages with

---

[4] Plaintiff also argues that the Army should have contacted the agents involved in the investigation to aid in locating the missing exhibits and video tapes. However, locating such agents twenty years after the fact and interviewing them about where they put evidence twenty years ago, is not reasonable or necessary for an adequate search. *See, e.g., W. Ctr. For Journalism v. I.R.S.*, 116 F. Supp. 2d 1, 8 (D.D.C. 2000) *aff'd*, 22 F. App'x 14 (D.C. Cir. 2001) (asserting that an agency "bears no obligation to conduct an exhaustive search, merely to carry out a reasonable one); *Oglesby*, 920 F. 2d 57, 68 (D.C. Cir. 1990) (finding no requirement "that an agency search every record system"); *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 9 (D.D.C. 2009) ("An agency's search need not be exhaustive, merely reasonable."); *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 71 (D.D.C. 2008) (same).

redactions and one page without redaction. *Id.* In responding to the plaintiff's FOIA request, the defendant relies on FOIA Exemptions (b)(6) and (b)(7)(C) for the withholding of the eleven pages and the redactions on the twenty-four disclosed pages. *Id.* Specifically, the defendant withheld: (1) the names and other identifying information of law enforcement agents, witnesses, and third parties pursuant to Exemptions 6 and 7(C); and (2) the handwritten and sworn statements and drawings (exhibits 4, 5, and 6) of the child victim, in their entirety, also pursuant to Exemptions 6 and 7(C). *Id.* Additionally, Army MEDCOM withheld the medical records of the child victim in their entirety pursuant to Exemption 6. *Id.* The plaintiff now argues that the defendant improperly withheld the names of the investigators and the child victim's written statements. Pl.'s Opp'n 17, ECF No. 18. The plaintiff further argues that Army MEDCOM improperly withheld the physical and psychological medical records of the child victim. *Id.* at 26. The Court finds that the Army appropriately withheld the information pursuant to the FOIA.

The FOIA's purpose is to "facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). Although the FOIA's disclosures are broad, Congress protects nine categories of documents from the FOIA's reach. *See* 5 U.S.C. § 552(b). Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Both exemptions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested

information." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting *Davis v. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although the balancing test is applied to both Exemption 6 and 7(C), "[t]he protection available under these exemptions is not the same." *Beck*, 997 F.2d at 4191. Specifically, "the balance tilts more strongly toward nondisclosure in the context of Exemption 7(C) because 'Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." *Braga v. F.B.I.*, 910 F. Supp. 2d 258, 267 (D.D.C. 2012) (quoting *Reporters Comm.*, 489 U.S. at 756). First, Exemption 6 "encompasses 'clearly unwarranted' invasions of privacy, while Exemption 7(C) omits the adverb 'clearly.'" *Id.* Second, Exemption 7(C) lowers the risk of harm standard from "would" to "could reasonably be expected to" constitute an invasion. *Id.* The differences in the language between the two exemptions reflect Congress's decision to provide the government with "greater flexibility in responding to FOIA requests for law enforcement records or information" than in responding to requests for personnel, medical, and other similar files. *See Reporters Comm.*, 489 U.S. at 777 n. 22.

Accordingly, if the documents withheld and information redacted were "complied for law enforcement purposes only," the Court need only engage in an analysis of whether the defendant properly redacted information and withheld documents pursuant to Exemption 7(C). *See People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 2014 WL 982875 (D.C. Cir. Mar. 14, 2014) (confining its FOIA analysis to Exemption 7(C) because its "privacy language is broader than the comparable language in Exemption 6") (quoting *Reporters Comm.*, 489 U.S. at 756), *see also Braga*, 910 F. Supp. 2d at 267 (finding no need to consider the higher bar of Exemption 6 as there was no dispute that the records were complied for law-enforcement purposes). All information and documents at issue here were "compiled for law enforcement

purposes only" and will be analyzed pursuant to Exemption 7(C), with the exception of the physical and psychological medical records of the child victim, which will be analyzed pursuant to Exemption 6.

1. **The Defendant Properly Withheld the Names and Identifying Information of Army Personnel and the Child Victim's Written Statements Under FOIA Exemption (b)(7)(C).**

### a. Privacy Interests

The first step in the Exemption 7(C) analysis is to identify whether a privacy interest exists in the requested records. *See ACLU v. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011). In the case of records related to investigations by criminal law enforcement agencies, Exemption 7(C) takes into consideration the "strong interest" of all individuals – suspects, witnesses, and investigators – "in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. Dept't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (1984)); *see also Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995) (explaining that Exemption 7(C)'s privacy interest extends to third parties who may be mentioned in investigatory files). Accordingly, Exemption 7(C) has been applied to withhold the names of third parties, including investigators, mentioned in law enforcement files. *See Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (asserting that "privacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated") (quoting *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007))*; see also Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (recognizing that "our decisions consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records"); *see also Dorsett v. U.S. Dep't of Treasury*, 307 F. Supp. 2d 28, 39 (D.D.C. 2004) (classifying the names of individuals that the defendant seeks to withhold, including the names of FBI agents and local law

enforcement personnel, as the "type of information . . . routinely considered protected by Exemption 7(C)).

### b. Public Interests

In response, the plaintiff does not take issue with the defendant's basis for invoking the privacy exemption; rather the plaintiff argues that the public interest outweighs any privacy interest, specifically that "the public is entitled to the release of the names of investigators involved in the investigation and prosecution of Mr. Rodriguez due to a compelling interest in insuring [sic] the integrity of investigations conducted by the Army CID."  Pl.'s Opp'n 24, ECF No. 18.  The plaintiff explains that "this case involves potentially exculpatory evidence which was never turned over to defense counsel at the time of trial.  As such, not only would this be a *Brady* violation, but would also present another issue of current public importance in full disclosure of Brady information to the government." *Id.*  The plaintiff also argues that there is a public interest in the child victim's statements because "[i]t appears that the interview of the victim was not consistent with the victim's sworn statement, and was therefore withheld from his defense counsel." *Id.* at 21.   Therefore, the relevant question becomes whether the plaintiff has shown government misconduct sufficient to overcome Exemption 7(C)'s privacy interest.

The Supreme Court has adopted an approach for analyzing a privacy interest protected by Exemption 7(C) against an asserted public interest in disclosing information alleged to show that "responsible officials acted negligently or otherwise improperly in performing their duties." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004).  "To obtain private information under the *Favish* test, the requester must at a minimum 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Blackwell*, 646 F.3d at 41 (quoting *Favish*, 541 U.S. at 174).  Therefore, courts

require a meaningful evidentiary showing when a FOIA requester alleges a public interest rooted in government wrongdoing. *See Favish*, 541 U.S. at 174 (recognizing that "allegations of government misconduct are 'easy to allege and hard to disprove'"). This Court concludes that the plaintiff has failed to meet the demanding *Favish* standard.

The plaintiff offers no support for the alleged government misconduct beyond offering the statement that "the fact that the videotaped interviews were never documented or otherwise memorialized until almost two years after their creation is evidence that the tapes were handled improperly." Pl.'s Opp'n 25, ECF 18. Moreover, the plaintiff's allegation that the tapes were neither disclosed nor provided to the defense counsel at the time of Mr. Rodriguez's court-martial is unsupported. *See id.* Plaintiff provides no first-hand witness testimony or contemporaneous documentary evidence establishing what was or was not disclosed during discovery preceding plaintiff's criminal trial. Even if the plaintiff did provide some scant support for his allegation of government misconduct during his criminal proceedings, courts have recognized that an alleged single instance of a *Brady* violation will not suffice to show a pattern of government wrongdoing. *See, e.g., Boyd v. Crim. Div. of the DOJ*, 475 F.3d 381, 388 (D.C. Cir. 2007).

Likewise, the plaintiff offers no support for his assertion that the child victim's statements were improperly withheld because the interview of the victim was inconsistent with victim's written statements. *See id.* at 21. Rather, the plaintiff bases these potential inconsistencies on mere speculation. *See id.* at 19-10 ("*Should* the requested written statements (Exhibits 4 and 5) be inconsistent with either each other or the taped interview of the victim . . . and is likely to exonerate Mr. Rodriguez, the public interest . . . outweighs any existing privacy concerns.") (emphasis added). Moreover, any interest in discovering potential inconsistencies

between the victim's statements would not be enough to establish government misconduct and therefore, would only be used by the plaintiff to challenge his conviction, which is not recognized by the courts as a public interest. *See e.g., Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002) (finding that plaintiff's "personal stake in using the requested records to attack his convictions does not count in the calculation of the public interest").

However, in *Roth v. U.S. Dep't of Justice*, the court recognized a more general public interest in "knowing whether the FBI is withholding information that could corroborate Bower's claim of innocence." 642 F.3d 1161, 1180 (D.C. Cir. 2011) (distinguishing this from an interest in disclosing *Brady* violations). Specifically, the *Roth* court deferred to the Fifth Circuit's conclusion that the "information 'was not material' for purpose of *Brady*, *Bower v. Quarterman*, 497 F.3d 459, 477 (5th Cir. 2007), but subsequently found that Bower had surmounted "the fairly substantial hurdle of showing that a reasonable person could believe that the FBI might be withholding information that could corroborate a death-row inmate's claim of innocence." *Roth,* 642 F.3d. at 1184. The court found that two sworn statements implicating others in the crime, in addition to the FBI's prior failure to disclose information favorable to Bower upon request, sufficiently established the potential for information that could corroborate Bower's claim of innocence. *Id.* at 1180. Therefore, after analyzing the FBI's *Glomar* response, the court concluded that "the FBI must either produce any records it has linking Gordon, Langford, or Ford to its investigation into the four murders, or it must follow the normal practice in FOIA cases of identifying the records it has withheld and stating its reasons for doing so." *Id.* at 1182. Although the plaintiff maintains a claim of innocence, unlike in *Roth*, any public interest in knowing whether the defendant withholds information that could corroborate that claim does not outweigh the privacy interests at stake.

### c. Balancing the Privacy and Public Interests

If there is a privacy interest in the requested materials and no public interest in disclosure, "[w]e need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). However, an identified public interest must be balanced against the privacy interest. *See id.* at 874 (requiring this balancing "in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy").

The magnitude of a privacy interest will somewhat differ for the types of information sought. *See Nation Magazine*, 71 F.3d at 895 (D.C. Cir. 1995) (indicating that certain records may implicate a less substantial privacy interest). Indeed, a more substantial privacy interest is implicated in the child victim's statements, *see Favish*, 541 U.S. at 170 (recognizing privacy interests of family members against the FOIA requests of "child molesters, rapists, murders, and other violent criminals" for "autopsies, photographs, and records . . . ."), than in the disclosure of the names of law enforcement agents. However, individuals mentioned in law enforcement files also have a recognized privacy interest. *See Spirko v. USPS*, 147 F.3d 992, 999 (D.C. Cir. 1998) (recognizing the "strong privacy interests of the suspects and law enforcement officers identified in the withheld documents"). And plaintiff has failed to show how the revelation of these names, rather than the substance of the documents, would reveal anything whatsoever concerning alleged government misconduct. Moreover, although the witness statements would contain more substantive information concerning any purported government misconduct, given that these statements detail the sexual abuse of a minor, the privacy interests are at their apex. Despite the different privacy interests implicated in the two types of information sought, the plaintiff nonetheless fails in establishing that the balance tilts in favor of disclosure.

Specifically, although the plaintiff has argued that disclosing the names of the law enforcement agents and the child victim's statements will expose government misconduct, the plaintiff has failed to provide any support for his assertion. *See Blackwell*, 646 F.3d at 41 (requiring, under the *Favish* test, that a requester provide enough information to allow a reasonable person to find that Government misconduct may have occurred). Therefore, no recognized public interest in disclosure exists. *See Spirko*, 147 F.3d at 999 (recognizing the privacy interests when "requested documents neither confirm nor refute the plaintiff's allegations of government misconduct").

Likewise, the plaintiff's asserted interest in knowing whether the defendant withholds information that could corroborate his innocence also fails. In contrast to *Roth*, the defendant here is not a death-row inmate, which the *Roth* court found significant. *Id.* at 1176 ("The fact that Bower has been sentenced to the ultimate punishment strengthens the public's interest in knowing whether the FBI's files contain information that could corroborate his claim of innocence."). Not only is plaintiff not subject to execution, but if he was sentenced to twenty years imprisonment in 1993, he is either already out of prison or will be very shortly. *See* Defs.' Stat. of Mat. Facts ¶ 1, ECF No. 15. And further, the defendant has not provided sufficient information to suggest that a reasonable person could believe that the defendant is withholding information that could prove the plaintiff's innocence. *See id.* at 1184. Moreover, not only has the defendant made clear what documents it specifically withheld and what information it specifically redacted, but the plaintiff, in response, has only provided unsubstantiated support for why this redacted or withheld information may potentially be relevant. *See* Pl.'s Opp'n 25, ECF 18 (summarizing the facts and suggesting that there remains a public interest in the public "knowing if the armed forces were overzealous in prosecuting sex crimes to the point of securing

the conviction of an innocent man in order to lessen the impact of these scandals and sway public opinion back in their favor").

Accordingly, the plaintiff has not sufficiently met the *Favish* standard for challenging the defendant's invocation of FOIA Exemption 7(C) for the names and identifying information of Army personnel and the child victim's written statements.  In sum, there is no competing public interest in disclosing the information that outweighs the privacy interests.

## 2. The Public Interest in Disclosing the Child Victim's Medical Records Does Not Outweigh the Privacy Interests of the Child Victim.

The defendant withheld exhibits three and seven, physical and psychological medical records of the child victim, pursuant to Exemption 6 of the FOIA.  *See* Defs.' Opp'n 23, ECF No. 25.  The plaintiff asserts that these exhibits were improperly withheld because the exhibits, as part of the CID ROI, are relevant to the public's understanding of how the defendant investigated and prosecuted Mr. Rodriguez.  *See* Pl.'s Opp'n 29, ECF No. 18.

Exemption 6 of the FOIA provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In the current case, both parties agree that FOIA Exemption 6 applies to both exhibit three and exhibit seven as they are medical (physical and psychological) records.  *See* Pl.'s Opp'n 28, ECF No. 18; *see also* Defs.' Opp'n 25, ECF No. 25. Accordingly, it must first be determined whether a privacy interest exists that would be compromised by disclosure.  *See Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  If a protectable privacy interest exists, this interest must then be balanced against any public interest in the requested information.  *Id.*  While the agency must establish that disclosure of the information "would compromise a substantial, as opposed to *de minimums*, privacy interest," *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989),

it remains the requestor's burden to articulate a significant public interest outweighing that privacy interest. *Schwaner v. Dep't of the Army*, 696 F. Supp. 2d 77, 82 (D.D.C. 2010).  The privacy interest in nondisclosure is weighed "against the only relevant public interest in FOIA balancing analysis – the extent to which disclosure of the information sought would 'she[d] light on an agency's performance . . . or otherwise let citizens 'know what their government is up to.'" *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994) (quoting *Reporters Comm.*, 489 U.S. at 773).

Exhibits three and seven concern "the psychological/medical records of a minor child made part of an Army CID Report of Investigation into the rape and sodomy of the same minor child by the plaintiff almost 20 years ago."  Defs.' Opp'n 26, ECF No. 25.  By the very nature of these exhibits, it is clear that there is a substantial privacy interest in withholding the thoughts and medical diagnosis of a minor child, who is now an adult.  *See Nat'l Sec. News Serv. V. U.S. Dep't of Navy*, 584 F. Supp. 2d 94, 96 (D.D.C. 2008) ("Records . . . indicating that individuals sought medical treatment at hospital are particularly sensitive.").  Furthermore, the plaintiff advances no public interest that would outweigh the child victim's privacy interest in the psychological/ medical records.  While the plaintiff argues that there is a public interest in "understanding how the defendant Army handled the underlying investigation and prosecution of this case," Pl.'s Opp'n 29, ECF No. 18, the plaintiff offers no evidence "that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174.  *But see NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) (explaining that the public interest requirement can be generally established if the requester could demonstrate that disclosure would serve to "check against corruption").  The plaintiff's asserted interest in "understanding how the defendant Army handled the underlying investigation

and prosecution of this case," Pl.'s Opp'n 29, ECF No. 18, is not a sufficient public interest to outweigh the privacy interests contained in these medical records of the most sensitive type. *See McCann v. U.S. Dep't of Health & Human Servs.*, 828 F. Supp. 2d 317, 323 (D.D.C. 2011) ("Plaintiff's desire only to 'determine the diligence of [the agency's] investigations does not present a public interest to trigger the balancing requirement."). Therefore, no basis exists for directing the disclosure of exhibits three and seven, which the defendant properly withheld under Exemption 6.

Furthermore, the defendant properly withheld these exhibits in their entirety due to their lack of segregability. *See Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) ("[A]ny nonexempt information must be segregated and released . . . unless the exempt and nonexempt information would impose significant costs on the agency and produce an edited document with little informational value.") (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981) (citations and internal quotation marks omitted); *see also Mead Data Cent.*, 566 F.2d at 260 (requiring that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions). Specifically, an attempt to segregate exempt information from nonexempt information in exhibits three and seven would produce "an edited document with little informational value." *Id.*; *see also* Peterson Decl. ¶ 5 ("Due to the personal nature of the requested records and the amount of redactions that would be required . . . any attempt to segregate would be unreasonable as it would result in essentially meaningless records."). Plaintiff has raised no issues to call into question defendant's reasonable segregability determination. Accordingly, the defendant properly withheld both of these exhibits in their entirety.

### 3. The Child Victim's Statements and Medical Records Are Also Properly Withheld Pursuant to FOIA Exemption (b)(3).

Although not initially withheld under Exemption 3, a provision of the Federal

Victim's and Witness Protection Act (2009), 18 U.S.C. § 3509(d), prohibits the disclosure of the

names and other information of child victims and witnesses and therefore, serves as an additional

basis for withholding the statements and drawings of the child victim (exhibits 4, 5, 6) and the

medical records of the child victim (exhibits 3, 7).[5] *See* Kardelis ¶¶ 4-5 (noting that defendant's

failure to raise this exemption in its motion for summary judgment was an inadvertent error).

FOIA Exemption 3 applies to information that is "specifically exempted by statute . . .

provided that such statute either (A) [requires withholding] in such a manner as to leave no

discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular

types of matters to be withheld." 5 U.S.C. § 552(b)(3). The Federal Victim and Witness

Protection Act "establishes particular criteria for withholding" information concerning a child

who is a victim of physical or sexual abuse and thus complies with the requirements of

---

[5] The defendant's failure to raise this exemption in its motion for summary judgment does not constitute a waiver as the plaintiff had an opportunity to reply. *See, e.g., Reliant Energy Power Generation, Inc. v. F.E.R.C.*, 520 F. Supp. 2d 194, 202 (D.D.C. 2007) (concluding that FERC did not waive its right to invoke a FOIA exemption in its second Motion for Summary Judgment by failing to include the exemption in its first motion); *see also Judicial Watch, Inc. v. DOJ*, 102 F. Supp. 2d 6, 12 & n.4 (D.D.C. 2000) (explaining that an agency may raise a new exemption if the plaintiff has an opportunity to respond). *But see Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 580 (D.C. Cir. 1987) (explaining that "agencies [may] not make new exemption claims to a district court after the judge has ruled in the other party's favor") (quoting *Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 846 (D.C. Cir. 1980), *vacated in part as moot*, 455 U.S. 997 (1982)).

Moreover, because the interests to be protected by the Act are those of the child victim and witness, the Court would be loathe to determine that the Army's oversight waived the child victim's significant privacy interests. Although plaintiff had an opportunity to respond to the (b)(3) argument, he did not do so, therefore, conceding the point. *See* Defs.' Opp'n 21-22, ECF No. 25; *see also* Pl.'s Reply to Defs.' Opp'n, ECF No. 28

Exemption 3.  *See* 18 U.S.C. § 3509(d) (requiring this information to be kept in a secure place and authorizing disclosure only to specific persons).

This Court has recognized that 18 U.S.C. § 3509(d) qualifies as an Exemption 3 withholding statute.  *See, e.g., Boehm v. FBI*, 2013 WL 2477091 (D.D.C. June 10, 2013); *Tampico v. EOUSA*, No. 04-2285, slip op at 8 (D.D.C. Apr. 29, 2005).  The statute prohibits disclosing "the name or any other information concerning a child," 18 U.S.C. § 3509(d), and therefore, mandates the withholding of the statements and drawings of the child victim describing plaintiff's sexual assaults of her (exhibits 4, 5, 6) and the medical records of the child victim (exhibits 3,7), in their entirety,  pursuant to Exemption 3.  Exhibits four, five, and six were also properly withheld pursuant to Exemption 7(C), *see supra* Part IV(B)(1), and three and seven were also properly withheld pursuant to Exemption 6 of the FOIA.  *See supra* Part IV(B)(2).

## V.  CONCLUSION

For the foregoing reasons, the defendants' Motion for Summary Judgment shall be granted and the plaintiff's cross-motion shall be denied.[6]


Dated:  March 27, 2014                                                RUDOLPH CONTRERAS
                                                                              United States District Judge

---

[6] Although plaintiff also raised a claim for reasonable attorney's fees, *see* Pl.'s Cross-Mot. ¶ 2, ECF No. 17.  given that summary judgment is entered in favor of defendant, plaintiff has not established that he is a substantially prevailing party entitled to fees pursuant to the FOIA.  *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984) (explaining that an award of attorneys' fees is proper when the complainant both "demonstrat[es] that he or she substantially prevailed" and "that he or she is entitled to an award").